UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH A. HAZELWOOD,

                             Plaintiff,                    <u>DECISION AND ORDER</u>

                                                                 14-CV-6421

                    v.

HIGHLAND HOSPITAL and
MARY JOHNSON, Individually,

                             Defendants.
_____

## **INTRODUCTION**

Plaintiff Elizabeth A. Hazelwood ("plaintiff") brings this action against her former employer, Highland Hospital ("Highland") and Highland employee Mary Johnson ("Johnson"), alleging that they failed to accommodate her disability and subjected her to disability-based discrimination and retaliation, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq. and the New York State Human Rights Law, N.Y. Exec. Law §290 et seq. ("NYSHRL"). Plaintiff also asserts New York common law claims for infliction of emotional distress.

Defendants now move for summary judgment dismissing the complaint pursuant to Fed. R. Civ. Proc. 56 (Dkt. #46). For the reasons that follow, that motion is granted.

1

**FACTUAL BACKGROUND**

Plaintiff was initially employed by Highland as a clinical laboratory ("lab") technologist in March 2008. Plaintiff is deaf, and throughout the relevant time period wore a cochlear implant in her right ear to assist her in translating sound to speech.

Plaintiff was originally hired as a temporary, provisional employee pending a three-month orientation. Plaintiff did not successfully complete the orientation period, and was granted an additional three-month orientation. At the end of the second orientation, Highland hired plaintiff as a full-time lab technologist. Plaintiff's duties included lab testing and analysis of patient specimens, interpretation of test results, reporting of test results to the requesting physicians, and maintenance and calibration of lab equipment.

Calling a physician to report test results immediately (a "critical call") is sometimes necessary, where the results are of a time-sensitive or critical nature, or where there is a problem with a sample. Because plaintiff's deafness made it impossible for her to make critical calls, Highland accommodated her (as well as another deaf technician) by permitting them to have another technologist make the calls on their behalf.

Plaintiff's performance evaluations through 2010 generally rated her as "meeting expectations." In her 2011 evaluation by Hematology Lab Supervisor Les Kleehammer, it was noted that plaintiff had in some instances failed to document her performance of quality control measures, and had failed to follow certain lab procedures that had been updated. In June 2012 when plaintiff was evaluated by Kleehammer's replacement, Johnson, plaintiff was rated as "meeting expectations," although Johnson expressed concerns that plaintiff's comfort level with instrument maintenance and troubleshooting, as well as her knowledge of policies and procedures,

required improvement, and suggested that plaintiff needed to work on treating coworkers respectfully.

In November 2012, Highland began requiring that a "Critical Call/Specimen Problem Form" be filled out to document all critical calls made by persons other than the technologist who performed the relevant test. Plaintiff objected to filling out the forms because she considered them to be "redundant," but eventually agreed to use them. In the months that followed, plaintiff was cited for filling out the forms improperly, making mistakes in transcribing test results, and failing to give copies of the form to the technologist making the call so that the form's accuracy could be double-checked.

In January 2013, plaintiff was counseled that she needed to check lists of pending tests more frequently during the day, and was briefly assigned to the day shift in order to undergo retraining in chemistry procedures, because it had been discovered during the implementation of a state-mandated process of double-checking manual entries in the lab that plaintiff had been making "excessive" errors in test performance and quality control practices. Plaintiff was informed on May 10, 2013 that placement on a performance improvement plan ("PIP") would follow.

Plaintiff failed to complete her re-training, and continued to make errors, particularly in her chemistry work. Plaintiff was counseled about her mistakes. On May 30, 2012, plaintiff and the other lab technologists on her shift were counseled by their supervisor about the need to communicate respectfully, and to coordinate breaks. On June 27, 2013, plaintiff received a performance review indicating that she was "not consistently meeting standards," and was formally placed on a 10-week PIP. Although plaintiff was counseled throughout the PIP, her

3

supervisors did not find that her performance improved, and found that plaintiff continued to violate lab operating procedures resulting in testing errors, provided incomplete and incorrect documentation of test results, failed to follow critical call procedures, and failed to check pending lists continuously throughout the workday. In August 2012, plaintiff twice engaged in insubordination, refusing to take a break when instructed, and on another occasion, refusing to perform a test and going to dinner instead.

On September 6, 2013, plaintiff was informed that because her performance had not improved, her employment with Highland was being terminated. Plaintiff filed the instant action on July 25, 2014. (Dkt. #1).

## DISCUSSION

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). While courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial

courts should not "treat discrimination differently from other ultimate questions of fact").

While granting plaintiff the liberal interpretation and favorable inferences due to her as a nonmovant, I find that she has failed to establish a prima facie case for her claims, and/or to rebut Highland's legitimate, nondiscriminatory explanations for its conduct.

## I. Plaintiff's Discriminatory Discipline/Termination Claim

Title I of the ADA prohibits employers from discriminating against any "qualified individual with a disability because of the disability of such individual in regard to "any aspect of employment." 42 U.S.C. §12112(a). Plaintiff's claims of discrimiantion in violation of the ADA are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a prima facie case of discrimination by demonstrating: (1) that plaintiff is a member of a protected class (that is, that she was disabled within the meaning of the ADA); (2) that she was "otherwise qualified" to perform the requirements of her potion, with or without reasonable accommodations; and (3) that she suffered an adverse employment action (here, placement on a PIP and/or termination), under (4) circumstances giving rise to an inference of discrimination. *See Cortex v. MTA N.Y. City Transit*, 802 F.3d 226, 231 (2d Cir. 2015); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009).

Once plaintiff has established a prima facie case, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). Once the employer has done so, the burden of proof returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center*, 509

U.S. at 508.

Initially, plaintiff has failed to make out a prima facie case of discrimination with respect to her placement on a PIP, and/or her eventual termination. While the first two elements of the claim are undisputed, plaintiff has not produced evidence to satisfy the latter elements – that she was "otherwise qualified" to perform the requirements of her position, or that she was terminated under circumstances suggesting discrimination.

As set forth above, by mid-2013, plaintiff was engaging in repeated failures to follow lab procedures and recordkeeping protocols. Plaintiff does not meaningfully deny these deficiencies, but argues that other technicians made mistakes as well, and attributes her performance issues to confusion caused by changes in procedures, poor cooperation from coworkers, and/or conflicting instructions from others. However, it is well settled that an employee's *own* perceptions of her performance and the reasons for its deficiencies cannot create an inference of discrimination or supply evidence of pretext, particularly where the performance issues at hand bear no relationship to the employee's disability. *See Gambello v. Time Warner Comm., Inc.*, 186 F. Supp. 2d 209, 223-24 (E.D.N.Y. 2002). Rather, "this court must focus on the perceptions of the decisionmakers." *Id*.

Here, there is simply no evidence whatsoever that plaintiff's deafness – rather than her lengthy history of performance problems, in areas that related to testing accuracy, results verification, manual entry of results, quality control, and insubordination – played a role in her placement on a PIP, or her termination. Plaintiff points to no evidence that any Highland administrator, supervisor or other decisionmaker was biased against deaf employees, made any discriminatory remarks toward plaintiff or other deaf employees, or otherwise displayed

6

discriminatory animus. To the contrary, Rosemary Ziemba-Ball, the lab manager who approved plaintiff's placement on a PIP and ultimately her termination, was the same individual who had approved plaintiff's hire as a full-time employee five years earlier. *See Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (where the individual who hired plaintiff is the same person who made the complained-of adverse employment decision, it is "difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire"). Nor is there any evidence that other, non-disabled technicians made errors of the same frequency or severity, and were treated differently from plaintiff.

Even assuming *arguendo* that plaintiff has established a prima facie case of discrimination, there is no evidence to rebut the Hospital's legitimate, nondiscriminatory reason for terminating her employment: plaintiff's lengthy, documented history of performance issues relative to laboratory testing procedures and documentation requirements. Plaintiff offers no evidence – only unsupported speculation – that her termination, or the PIP that preceded it, were pretexts for discrimination. As such, she has failed to produce evidence by which a reasonable jury could find in her favor, and her discrimination claim is dismissed.[1]

---

1 To the extent that plaintiff's complaint alludes to a hostile work environment, that claim is likewise dismissed. To establish such a claim, plaintiff must plead and prove that her workplace was "permeated with discriminatory intimidation, ridicule, and insult... sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993). Here, plaintiff alleges only that on a single occasion, in or around January 2012, a coworker told plaintiff that she "shouldn't be a charge tech because you're deaf and you can't even take the phone calls." Initially, the comment falls outside of the applicable statute of limitations, and the claim is therefore time-barred. Moreover, plaintiff does not recall whether she reported the comment to anyone at Highland. A single stray remark by a coworker cannot, by itself, serve as the basis for a hostile work environment claim, particularly in the absence of any evidence by which it could be imputed to the employer. *See e.g.*, *Salmon v. Pliant Corp.*, 965 F. Supp 2d 302, 307 (W.D.N.Y. 2013); *Daggs v. Donahoe*, 2014 U.S. Dist. LEXIS 74157 at *15 (W.D.N.Y. 2014). Plaintiff's hostile work environment claim is therefore dismissed.

## II. Plaintiff's Discriminatory Failure to Hire/Promote Claims

Plaintiff also claims that the hospital discriminatorily denied her promotions and transfers to several positions. In order to prove that she was discriminatorily denied a promotion, plaintiff must establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she applied for a position or promotion for which she was qualified; (3) she was rejected for the position; and (4) the employer kept the position open and continued to seek applicants having the plaintiff's qualifications. *See e.g., Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009). "In all cases, for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff 'was rejected under circumstances giving rise to an inference of unlawful discrimination.'" *Id.* (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998).

Once a prima facie case is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer does so, the burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is pretextual. *See St. Mary's Honor Center*, 509 U.S. 502 at 508.

Nonetheless, courts are not empowered to "sit as a super-personnel department that reexamines employers' judgments," *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014), and it is well settled that "[t]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 104 (2d Cir. 2001). Where the employer's "explanation [is] offered in clear and specific terms, [and] 'is reasonably attributable to an honest even though partially subjective evaluation of . . . qualifications, no inference of discrimination can be drawn.'" *Id.* (quoting *Lieberman v. Gant*, 630 F.3d 60, 67 (2d Cir. 1980)).

### A. October 2011: Evening Shift Assistant Supervisor Position

Plaintiff claims that she was discriminatorily denied an evening shift assistant supervisor position for which she applied in October 2011, which was filled with a different candidate in August 2012.

Plaintiff's earliest EEOC charge was filed July 12, 2013 – nearly two years after she was denied the position, and at least 315 days after the decision was made to hire a different candidate. As such, the claim is dismissed as time-barred. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (a plaintiff raising an ADA claim of discrimination must exhaust all administrative remedies by filing an EEOC charge within 300 days of the alleged discriminatory conduct).

### B. February 2013: Day/Evening Shift Technician

Plaintiff also claims she was discriminatorily denied a shift technician position in the hematology lab, for which she applied in or around February 2013. Another Highland lab technologist, Jeff Macksamie, was ultimately selected for that position.

Highland's records from plaintiff's interview express concerns about plaintiff's lack of complete or focused answers to interview questions – such as plaintiff's inability, when asked to name three characteristics important to the lab technologist position, to name more than two. In contrast, records of Macksamie's interview reflect that the interviewers found his answers to be responsive, and noted that he had expressed willingness to take on extra work in the lab, and had prior outside supervisory experience. Nothing in the records suggests any reluctance to promote plaintiff because of her disability, and plaintiff concedes that her belief that the interviewers were acting discriminatorily is nothing more than supposition, and has offered no substantive opposition

to the defendants' motion insofar as it seeks to dismiss this claim.

Because pure speculation is insufficient to support a claim of discriminatory failure to hire, and because plaintiff has produced no evidence by which a reasonable jury could find that Highland's decision to hire a different candidate was motivated in any measure by plaintiff's disability, plaintiff's failure to promote claim concerning the day/evening shift technician position is dismissed.

### C. April 2013: Day/Evening Shift Technician Position

In April 2013, plaintiff applied for another lab technician opening, in the chemistry lab. For this interview, plaintiff requested, and was provided by Highland, the services of a sign language interpreter. She was also given a written list of the interview questions in advance to help her prepare.

Another Highland tab technologist, Dan Rudy, was chosen for the position instead of plaintiff. According to his interviewers' notes, they found that he had shown initiative in resolving problems in the lab, was effective at keeping patient care units informed of issues that would impact test results, worked independently, and gave thoughtful and direct answers to interview questions. The notes relating to plaintiff's interview, in contrast, reflected that plaintiff was unable to answer many of the interview questions despite having had the opportunity to see them in advance, and denied having had a past conflict with a manager, despite the conflict having been documented in counseling sessions. One interviewer also expressed concern about plaintiff's fitness for a chemistry lab position, when plaintiff was known to have committed numerous errors in her chemistry work with simpler, manual tests.

Plaintiff does not dispute the accuracy of the panel's notations, but points to a single piece

of evidence which she characterizes as a display of discriminatory animus: the interviewers' written acknowledgement of *plaintiff's* comments during her interview that she believed that the critical call forms provided to her and another deaf technician as an accommodation were "discriminatory," because hearing technicians were not required to use them. Plaintiff does not explain, nor is it clear to the Court, how plaintiff's own invocation of the word "discriminatory" at her interview could be interpreted by any reasonable trier of fact as evidence that the interviewers declined to select plaintiff for the position because of her disability. To the extent that such evidence might be relevant to a retaliation claim (in that plaintiff alleges that she complained about a policy by using the word "discriminatory," and was thereafter denied the transfer for which she was interviewing), plaintiff has not alleged or attempted to prove such a claim.

In short, plaintiff has not produced any admissible evidence that could persuade a reasonable trier of fact that the interview panel considered, let alone that it viewed with discriminatory animus, plaintiff's deafness in evaluating her fitness for the chemistry lab position. As such, plaintiff's failure to hire claim concerning that position is dismissed.

  **III.** **Plaintiff's Failure to Accommodate Claims**

To establish a claim for denial of a reasonable accommodation in violation of the ADA, plaintiff must show that: (1) she is a person with a disability within the meaning of the ADA; (2) her employer was on notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the employer refused to provide the accommodation. *See Noll v. IBM*, 787 F.3d 89, 94 (2d Cir. 2015).

A reasonable accommodation is one that will "enable an individual with a disability who

is qualified to perform the essential functions of that position." 29 C.F.R. §1630.2(o)(1)(ii). It is well-settled that employers are not required to provide the particular accommodation that an employee specifically requests or prefers – what is required is that the employer provide an appropriate and effective accommodation. *See Noll*, 787 F.3d 89 at 94-95.

Here, plaintiff offers no evidence that the accommodations provided to her by Highland – the critical call procedures whereby plaintiff could fill out a written form so that another technologist could make the call on her behalf – were ineffective, or otherwise failed to enable her to satisfy the essential job function of relaying critical or time-sensitive test results to physicians. Instead, plaintiff claims that Highland could and should have provided certain alternative means of communication, such as a sign language interpreter and/or a videophone, because they would have been simpler and more convenient, would have vitiated the risk that plaintiff might make errors in transcribing test results onto a written form, and would not have required plaintiff to seek assistance from other technologists in order to ensure that a call was made.

The fact that the accommodations that were provided to plaintiff were not the ones that she found the most preferable, convenient or expedient is of no moment where, as here, there is no dispute that the accommodations provided by Highland permitted plaintiff to perform the relevant requirements of her position with regard to making critical calls. *See id.* (employer has the ultimate discretion to choose between effective accommodations, and may choose the less expensive or more convenient accommodation, even if it is not the one plaintiff prefers). Plaintiff's failure to accommodate claims are therefore dismissed.

## IV. Plaintiff's Retaliation Claims

Plaintiff also claims that Highland retaliated against her for filing an EEOC charge in July 2013, and/or for making a complaint of unfair treatment to Highland's Human Resources department in May 2013.

Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases. *See Lovejoy-Wilson v. Noco Motor Fuel, Inc*., 263 F.3d 208, 223 (2d Cir. 2001) ("[w]e analyze a retaliation claim under the ADA using the same framework employed in Title VII cases"). In order to establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). A plaintiff's burden at this prima facie stage is de minimis. *See Richardson v. New York State Dept. of Correctional Serv.*, 180 F.3d 426, 444 (2d Cir. 1999).

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant does so, the plaintiff must identify evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation, and that the real reason for its actions was ADA-proscribed retaliation. *See Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, 2017 U.S. Dist. LEXIS 29764 at *106 (E.D.N.Y. 2017) (quoting *St. Mary's Honor Center*, 509 U.S. at 515-516).

Here, even assuming *arguendo* that plaintiff has established a prima facie case of retaliation based on her termination, Highland has identified a legitimate, nondiscriminatory reason for that

13

action which plaintiff has failed to rebut: plaintiff's inability to perform essential requirements of her position, including following lab procedures for performing tests and quality control, correctly documenting test results, etc.

Plaintiff contends that the temporal proximity between her protected activity, and her termination just a few weeks later, is sufficient to raise a question of fact as to whether the performance issues Highland describes were a pretext for retaliation. However, it is well settled that, "[a]dverse employment actions that are part of an 'extensive period of progressive discipline' that begins prior to any protected activity . . . cannot give rise to an inference of retaliation sufficient to make out a prima facie case." *Porter v. Potter*, 366 Fed. Appx. 195, 197 (2d Cir. 2010) (unpublished opinion) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). *See also Chen v. City Univ. of New York*, 805 F.3d 59, 72 (2d Cir. 2015) ("no reasonable jury could conclude" that the decision not to reappoint a professor was motivated by retaliatory animus, when the record establishes that the decisionmakers had concluded, long before plaintiff's protected activity, that she had behaved improperly on the job); *Frezzell v. New York State DOL*, 2017 U.S. Dist. LEXIS 182030 at *19 (N.D.N.Y. 2017) (where plaintiff began receiving negative performance evaluations nine months before engaging in protected activity, "no reasonable jury could conclude" that later criticism of plaintiff's performance was motivated by his protected activity).

Such is the case here. It is undisputed that Highland recognized and began to document plaintiff's performance problems as early as her June 2012 performance review, long before plaintiff's Human Resources complaint in May 2013 and/or EEOC charge in July 2013. In the months that followed the 2012 performance review, plaintiff received numerous additional

performance warnings, was counseled about lab errors, failures to follow procedure, and interpersonal issues with coworkers, and was told in May 2013 that she was to be placed on a PIP. She received an unfavorable performance review and was finally placed on a PIP in June 2013. Because plaintiff's protected activities undisputedly took place only after the long and escalating series of performance issues for which she was allegedly terminated was well underway, the temporal proximity between plaintiff's protected activity and her termination is insufficient to establish a prima facie case of retaliation, and/or to rebut Highland's explanation for its decision to terminate plaintiff's employment.

Plaintiff also attempts to characterize certain remarks by her supervisors and a fellow technologist as evidence of retaliatory animus. Specifically, plaintiff describes comments that plaintiff was "singling herself out" or engaging in "a little protest," which were made when plaintiff balked at using the critical call form and encouraged another deaf technician not to use it. On their face however, these comments pertain only to plaintiff's reluctance to follow critical call procedures, and are wholly unrelated to her deafness and/or her engagement in protected activity. There is no evidence, nor can any reasonable inference be made, that these comments referred to, were motivated by, or even were made with knowledge of, plaintiff's complaints to HR or her EEOC charge.

In short, given plaintiff's lengthy history of performance problems and progressive discipline which predated her protected activity by a year or more, there is no evidence by which a reasonable finder of fact could conclude that Highland's stated reason for plaintiff's ultimate termination (poor performance) was pretextual, and that the real reason for her termination was retaliation for her discussions with Human Resources, and/or filing of an EEOC charge.

Plaintiff's retaliation claims are dismissed.

### V.     Plaintiff's State Law Claims

Plaintiff also asserts New York common law claims for intentional infliction of emotional distress and negligent infliction of emotional distress.   Having dismissed plaintiff's claims arising under federal law, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

### CONCLUSION

For the foregoing reasons, plaintiff has failed to produce sufficient evidence by which a reasonable trier of fact could find that she has established her discrimination or retaliation claims. Accordingly, defendants' motion for summary judgment (Dkt. #46) is granted, and plaintiff's claims are dismissed in their entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
          November 30, 2017